NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0721
    Facsimile: (213) 894-0141
    E-mail:   John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE EXTRADITION OF<br><br>CHRISTOHER PHILIP AHN,<br><br>A Fugitive from the Government of Kingdom of Spain. | No. 2:19-MJ-01523<br><br>GOVERNMENT'S REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN J. LULEJIAN; [PROPOSED] ORDER |
|---|---|

1  Plaintiff, United States of America, by and through its counsel
2  of record, the United States Attorney, hereby submits its request for
3  detention pending further extradition proceedings.
4
5  Dated: April 19, 2019         Respectfully submitted,
6                                NICOLA T. HANNA
                                  United States Attorney
7
                                  LAWRENCE S. MIDDLETON
8                                 Assistant United States Attorney
                                  Chief, Criminal Division
9
10                                /s/ John J. Lulejian
                                  JOHN J. LULEJIAN
11                                Assistant United States Attorney
12                                Attorneys for Complainant
                                  UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  PROCEDURAL BACKGROUND**

This is an extradition matter.  The fugitive, CHRISTOPHER PHILIP AHN ("AHN"), has been arrested pursuant to a warrant based on a request for his provisional arrest with a view towards his extradition submitted by the Kingdom of Spain ("Spain").  AHN is the subject of a warrant of arrest from Spain, issued on April 12, 2019, by Judge Jose de la Mata Amaya of the Central Court of Investigation No. 5, National High Court, in Madrid, Spain, for (1) Breaking and Entering, in violation of Articles 202 and 203 of the Spanish Penal Code; (2) Illegal Restraint, in violation of Articles 163 and 165 of the Spanish Penal Code; (3) Threats, in violation of Articles 169 and 171 of the Spanish Penal Code; (4) Robbery with Violence and Intimidation, in violation of Articles 237, 241, and 242 of the Spanish Penal Code; (5) Causing Injuries, in violation of Article 147 of the Spanish Penal Code; and (6) Criminal Organization, in violation of Article 570 _bis_ of the Spanish Penal Code.  The United States submits that detention of AHN is appropriate, and moves for such detention.

**II.  ARGUMENT**

Like the extradition process as a whole, the determination of whether to release a fugitive on bail is _sui generis_.  The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 _et seq._, do not provide for bail.  Further, the Bail Reform Act, 18 U.S.C. §§ 3141 _et seq._, does not apply because an extradition

proceeding is not a criminal case.[1] See Kamrin v. United States, 725 F.2d 1225, 1228 (9th Cir. 1984); In re Extradition of Perez-Cueva, No. 16-MJ-0233, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016). Rather, case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." United States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

### A. Applicable Law

#### 1. A Strong Presumption Against Bail Governs in an International Extradition Proceeding

Unlike in domestic criminal cases, "[t]here is a presumption against bail in an extradition case." Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989); see also United States v. Snyder, No. 13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting that presumption against bail in extradition is "well-established"). The Supreme Court established this presumption against bail in Wright v. Henkel, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant,

---

[1] The Bail Reform Act applies only to "offenses" in violation of United States law that are triable in the courts of the United States. See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Here, AHN is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with offenses committed in violation of the law of the requesting state, Spain.

2

|   |   |
|---|---|
| 1 | and the other government is under obligation to make the |
| 2 | surrender; an obligation which it might be impossible to |
| 3 | fulfill if release on bail were permitted.  The enforcement |
| 4 | of the bond, if forfeited, would hardly meet the |
| 5 | international demand; and the regaining of the custody of |
| 6 | the accused obviously would be surrounded with serious |
| 7 | embarrassment. |
| 8 | 190 U.S. 40, 62 (1903); accord Jimenez v. Aristiguieta, 314 F.2d 649, |
| 9 | 653 (5th Cir. 1963) ("No amount of money could answer the damage that |
| 10 | would be sustained by the United States were the appellant to be |
| 11 | released on bond, flee the jurisdiction, and be unavailable for |
| 12 | surrender, if so determined.  The obligation of this country under |
| 13 | its [extradition] treaty with Venezuela is of paramount |
| 14 | importance."); United States ex rel. McNamara v. Henkel, 46 F.2d 84, |
| 15 | 84-85 (S.D.N.Y. 1912) (presentation of forfeited bail to foreign |
| 16 | nation "is ridiculous, if not insulting"). |
| 17 | The prudential reasons for this presumption against bail in |
| 18 | international extradition cases are clear and compelling.  When, as |
| 19 | here, a requesting country meets the conditions of the Treaty, the |
| 20 | United States has an "overriding interest in complying with its |
| 21 | treaty obligations" to deliver the fugitive.  In re Extradition of |
| 22 | Garcia, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); see also Wright, |
| 23 | 190 U.S. at 62.  It is imperative that the United States be regarded |
| 24 | in the international community as a country that honors its |
| 25 | agreements in order to be in a position to demand that other nations |
| 26 | meet their reciprocal obligations to the United States.  Such |
| 27 | reciprocity would be defeated if a fugitive flees after being |
| 28 | released on bond.  See In re Extradition of Martinelli Berrocal, 263 |

F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur Executive Branch has a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future. And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and surrender him or her to the foreign jurisdiction.").

### 2. Fugitives Must Be Detained Unless They Establish "Special Circumstances" and also Demonstrate that They Are Neither a Flight Risk Nor a Danger to the Community

In light of the strong presumption against bail established in Wright and its progeny, fugitives may not be released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant their release. See, e.g., In re Extradition of Antonowitz, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); In re Extradition of Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996). "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." In re Extradition of Kin-Hong, 913 F. Supp. 50, 53 (D. Mass. 1996). Further, the burden of showing "special circumstances" rests upon the fugitive. See, e.g., Salerno, 878 F.2d at 317-18.

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense. See, e.g., Martinelli Berrocal, 263 F. Supp. 3d at 1304; In re Extradition of Beresford-

4

Redman, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that fugitive facing serious charges in foreign country had both "incentive and ability to flee" and therefore presented flight risk); In re Extradition of Patel, 08-430-MJ-HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering fact that fugitive had "more than sufficient assets available with which to flee"). Crucially, the "special circumstances" inquiry is separate from considerations of danger to the community or risk of flight. See, e.g., Perez-Cueva, 2016 WL 884877, at *2 (special circumstances must exist in addition to absence of risk of flight). "Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance. Leitner, 784 F.2d at 161; see also Salerno, 878 F.2d at 317-18 (lack of flight risk "is not a criteria for release in an extradition case"). Conversely, a fugitive who poses a danger to the community or a risk of flight should be denied bail, even in the face of special circumstances. See In re Extradition of Siegmund, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

"Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." Mainero, 950 F. Supp. at 294 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir. 1992)). Courts have considered and rejected a lengthy list of would-be special circumstances, including:

- The complexity of the pending litigation, see, e.g., United States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996);
- The fugitive's need to consult with an attorney and/or participate in pending litigation, see, e.g., Smyth, 976 F.2d at 1535-36;

5

- The fugitive's character, background, and/or ties to the community, see, e.g., In re Extradition of Noeller, No. 17 CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017); Beresford-Redman, 753 F. Supp. 2d at 1089; In re Extradition of Sidali, 868 F. Supp. 656, 658 (D.N.J. 1994);

- The fact that the fugitive may have been living openly, see, e.g., Leitner, 784 F.2d at 160-61; In re Extradition of Pelletier, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, see, e.g., In re Extradition of Noeller, 2017 WL 6462358, at *8-9; Martinelli Berrocal, 263 F. Supp. 3d at 1301-02; In re Extradition of Kyung Joon Kim, No. 04-CV-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

- United States citizenship or the pendency of naturalization or other immigration proceedings, see, e.g., Antonowitz, 244 F. Supp. 3d at 1072; Knotek, 2016 WL 4726537, at *7; In re Extradition of Orozco, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, see, e.g., Pelletier, 2009 WL 3837660, at *3-4 (allegedly well-respected businessman); In re Extradition of Heilbronn, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, see, e.g., In re Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, see, e.g., Salerno, 878 F.2d at 318; Antonowicz, 244 F. Supp. 3d at 1070; and
- The availability of bail for the same offense in the requesting country, see, e.g., Antonowicz, 244 F. Supp. 3d at 1070; Kyung Joon Kim, 2004 WL 5782517, at *2; Siegmund, 887 F. Supp. at 1386-87.

While in certain exceptional cases some of the above may have been deemed a "special circumstance," courts generally determine "special circumstances" to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B.   Analysis**

The Court should detain AHN without bond. As an initial matter, AHN is a significant flight risk. According to the information provided by Spanish authorities, AHN fled immediately after committing the attack on the Embassy of the Democratic People's Republic of Korea ("the Embassy"), evading police in either an official vehicle stolen from the Embassy or with co-conspirator, ADRIAN HONG CHANG ("HONG CHANG"), in an Uber, using a fraudulent account registered under one of HONG CHANG's aliases. (See Docket No. 1 at ¶¶ 6(j)-(k).) The fact that AHN has already sought to evade prosecution in Spain is indicative of his risk of flight in the United States. Cf. United States v. Botero, 604 F. Supp. 1028, 1035

(S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same--the avoidance of prosecution.") (citing Jhirad v. Ferrandina, 536 F.2d 478, 483 (2d Cir. 1976)).

In addition, AHN has a strong incentive to flee, as he faces a significant prison sentence – of potentially more than ten years – if he is extradited and convicted in Spain of the six crimes for which his extradition is sought. See, e.g., Perez-Cueva, 2016 WL 884877, at *3 (seriousness of allegations against fugitive "militates against release on bail"); In re Extradition of Shaw, No. 14-MC-81475, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015) ("[T]he Defendant is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee."); In re Extradition of Adame, Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682, at *7-8 (S.D. Tex. Mar. 25, 2013) (the fugitive "has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there is a significant risk that he will be formally extradited to Mexico"). Hence, further flight from the United States to yet another country or to an underground location in the United States is a reasonable assumption.

AHN also presents a danger to the community. He is accused of participating in a brazen attack on diplomatic personnel in Spain.

AHN and his accomplices violently assaulted and physically restrained their victims, using knives, machetes, iron bars, imitation handguns, shackles, and cables. (See Docket No. 1 at ¶ 6.) Multiple victims reported having bags thrown over their heads, and at least one victim reported being threatened with iron bars and imitation handguns. (See id. at ¶¶ 6(d), (h).) Following the attack of the Embassy, HONG CHANG told the Federal Bureau of Investigation that AHN was one of the members of the group who participated in the attack on the Embassy and was a former United States Marine.[2] (See id. at ¶ 6(n).) In addition, when the United States Marshals Service arrested AHN on April 18, 2019, they discovered, concealed in his waistband, a fully loaded Springfield Armory XD Sub-Compact model .40-caliber semiautomatic pistol and a second magazine with ten .40-caliber rounds of ammunition, for which he claimed he had a conceal-carry permit.[3] (See Lulejian Decl. at ¶ 3.) Given the serious and violent nature of AHN's alleged crimes, his military training, and his familiarity and access to firearms, the community both in the United States and abroad would be at risk were he to be released. Further, allowance of bail in any amount would not guarantee AHN's presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs.

---

[2] Spanish authorities have provided photographs of AHN outside of the Embassy on the day of the attack. (See Decl. of John J. Lulejian, dated 04/19/2019 ("Lulejian Decl."), at ¶ 2, Ex. A.)

[3] The Marshals have determined that AHN does has a valid conceal-carry permit. (See Lulejian Decl. at ¶ 3.)

AHN's risk of flight and danger to the community are each sufficient reasons for the Court to deny any forthcoming application for bail. However, even if the Court were satisfied that HONG CHANG is not a flight risk and poses no danger to the community here or abroad, the government is unaware of any "special circumstances" that would justify bail in this case.

Should, however, the Court be inclined to grant bail in this case, the government respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances." Moreover, in order to protect the ability of the United States to meet its treaty obligations to the Government of Spain, the United States also requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that AHN be detained pending resolution of this extradition proceeding.

**DECLARATION OF JOHN J. LULEJIAN**

I, John J. Lulejian, declare as follows:

1. I am an Assistant United States Attorney and am one of the attorneys assigned to prosecute In re Extradition of Ahn, Case No. 2:19-MJ-01523. I make this declaration in support of the Government's Request for Detention Pending Extradition Proceedings.

2. On or about April 19, 2019, I received copies of security camera photographs that I understand the United States Department of Justice, Office of International Affairs, received from Spain, true and correct copies of which are attached hereto as Exhibit A. I am informed and believe that Spain has represented that these security camera photographs are of CHRISTOPHER PHILIP AHN ("AHN") outside of the Embassy of the Democratic People's Republic of Korea, on February 22, 2019, on the day of the attack.

3. I am informed and believe that when the United States Marshals Service arrested AHN on April 18, 2019, they discovered, concealed in his waistband, a fully loaded Springfield Armory XD Sub-Compact model .40-caliber semiautomatic pistol and a second magazine with ten .40-caliber rounds of ammunition, for which he claimed he had a conceal-carry permit.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 19th day of April, 2019, at Los Angeles, California.

/s/John J. Lulejian
JOHN J. LULEJIAN

# EXHIBIT A







