1  NICOLA T. HANNA
   United States Attorney
2  PATRICK R. FITZGERALD
   Assistant United States Attorney
3  Chief, National Security Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-0721
        Facsimile: (213) 894-0141
7       E-mail:    John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9

10                  UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  IN THE MATTER OF THE          No. 2:19-MJ-01523
    EXTRADITION OF
13                                UNITED STATES' OPPOSITION TO
    CHRISTOHER PHILIP AHN,        FUGITIVE'S APPLICATION FOR
14                                RECONSIDERATION OF ORDER GRANTING
    A Fugitive from the           GOVERNMENT'S REQUEST FOR
15  Government of Kingdom of Spain. DETENTION; MEMORANDUM OF POINTS
                                  AND AUTHORITIES; DECLARATION OF
16                                JOHN J. LULEJIAN; EXHIBIT

17                                Date:      June 18, 2019
                                  Time:      3:00 p.m.
18                                Location:  Courtroom of the
                                             Hon. Jean Rosenbluth
19

20

21      Plaintiff, United States of America, by and through its counsel

22  of record, the United States Attorney, hereby submits its Opposition

23  to Fugitive's [CHRISTOPHER PHILIP AHN ("AHN")] Application for

24  Reconsideration of Order Granting Government's Request for Detention.

25  This opposition is based on the attached Memorandum of Points and

26  Authorities, the attached Declaration of John J. Lulejian and

27  accompanying Exhibit, the government's Motion for Detention (Docket

28  No. 11), the statements made by government counsel at the

April 23, 2019, hearing, and any evidence that may be presented at the June 18, 2019, hearing on this matter.

For the reasons set forth in detail below, the government respectfully requests the Court deny AHN's application and continue to detain him pending extradition to Spain.

Dated: June 13, 2019          Respectfully submitted,

                              NICOLA T. HANNA
                              United States Attorney

                              PATRICK R. FITZGERALD
                              Assistant United States Attorney
                              Chief, National Security Division


                              */s/ John J. Lulejian*
                              JOHN J. LULEJIAN
                              Assistant United States Attorney

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   ARGUMENT.....................................................3

      A.    AHN Fails to Establish Special Circumstances that
            Warrant Release on Bail................................3

            1.    Legal Standard...................................3

            2.    The Circumstances of This Case Are Not So
                  "Unique" that They Amount to a "Special
                  Circumstance"....................................6

            3.    The Nationality of the Victims in This Case is
                  Not a "Special Circumstance"....................12

            4.    The Possibility of Delayed Extradition and
                  Appellate Proceedings is Not a "Special
                  Circumstance"...................................13

            5.    Availability of Bail in Spain is Not a "Special
                  Circumstance"...................................15

            6.    Financial and Emotional Hardships Are Not
                  "Special Circumstances".........................17

            7.    AHN's Character and Support in the Community are
                  Not "Special Circumstances".....................19

            8.    Neither AHN's Alleged Lack of Flight Risk nor
                  Danger to the Community is a "Special
                  Circumstance"...................................20

      B.    AHN Fails to Establish that He Does Not Pose a Risk of
            Flight or a Danger to the Community....................21

            1.    AHN Poses a Risk of Flight......................21

            2.    AHN Poses a Danger to the Community.............24

III.  CONCLUSION..................................................25

i

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                      <u>PAGE</u>

<u>FEDERAL CASES</u>

<u>Boos v. Berry</u>,
        485 U.S. 312 (1988)......................................... 10

<u>Borodin v. Ashcroft</u>,
        136 F. Supp. 2d 125 (E.D.N.Y. 2001)........................ 11

<u>Drumm v. McDonald</u>,
        Civ. A. No. 15-14221-RGS, 2016 WL 111411
        (D. Mass. Jan. 11, 2016)................................... 16

<u>Finzer v. Berry</u>,
        798 F.2d 1450 (D.C. Cir. 1986)............................. 10

<u>Garcia v. Benov</u>,
        No. CV 08-07719 MMM (CWx), 2009 WL 6498194,
        (C.D. Cal. Apr. 13, 2009).................................. 4

<u>Hu Yau-Leung v. Soscia</u>,
        649 F.2d 914 (2d Cir. 1981)................................ 5

<u>In re Extradition of Adame</u>,
        Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682
        (S.D. Tex. Mar. 25, 2013)............................. 22, 23

<u>In re Extradition of Antonowicz</u>,
        244 F. Supp. 3d 1066 (C.D. Cal. 2017)............... 4, 16, 18

<u>In re Extradition of Azizi</u>,
        No. 5:14-xr-90282 PSG, 2014 WL 1995083
        (N.D. Cal. May 13, 2014).............................. 16, 20

<u>In re Extradition of Beresford-Redman</u>,
        753 F. Supp. 2d 1078 (C.D. Cal. 2010)................. <u>passim</u>

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

<u>In re Extradition of Drumm</u>,

    150 F. Supp. 3d 92 (D. Mass. 2015)......................... 18

<u>In re Extradition of Heilbronn</u>,

    773 F. Supp. 1576 (W.D. Mich. 1991).................... 11, 13

<u>In re Extradition of Kirby</u>,

    106 F.3d 855 (9th Cir. 1996)............................ <u>passim</u>

<u>In re Extradition of Kyung Joon Kim</u>,

    No. CV 04-3886-ABC(PLA), 2004 WL 5782517

    (C.D. Cal. July 1, 2004)............................. 4, 5, 16

<u>In re Extradition of Mahabir</u>,

    858 F. Supp. 504 (D. Md. 1994)............................ 18

<u>In re Extradition of Mainero</u>,

    950 F. Supp. 290 (S.D. Cal. 1996)....................... 5, 13

<u>In re Extradition of Martinelli Berrocal</u>,

    263 F. Supp. 3d 1280 (S.D. Fla. 2017).................. 16, 22

<u>In re Extradition of Nacif-Borge</u>,

    829 F. Supp. 1210 (D. Nev. 1993)................. 4, 5, 19, 20

<u>In re Extradition of Russell</u>,

    805 F.2d 1215 (5th Cir. 1986)............................. 21

<u>In re Extradition of Sacirbegovic</u>,

    280 F. Supp. 2d 81 (S.D.N.Y. 2003)........................ 15

<u>In re Extradition of Santos</u>,

    473 F. Supp. 2d 1030 (C.D. Cal. 2006).............. 4, 5, 6, 21

<u>In re Extradition of Shaw</u>,

    No. 14-MC-81475, 2015 WL 521183

    (S.D. Fla. Feb. 6, 2015)................................. 22

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                        PAGE

In re Extradition of Sidali,
     868 F. Supp. 656 (D.N.J. 1994)............................. 19
In re Extradition of Siegmund,
     887 F. Supp. 1383 (D. Nev. 1995)........................... 16
In re Extradition of Smyth,
     976 F.2d 1535 (9th Cir. 1992)........................... passim
In re Extradition of Sutton,
     898 F. Supp. 691 (E.D. Mo. 1995)........................ 6, 20
In re Extradition of Valles,
     36 F. Supp. 2d 1228 (S.D. Cal. 1998)....................... 19
Jhirad v. Ferrandina,
     536 F.2d 478 (2d Cir. 1976)................................ 22
Kamrin v. United States,
     725 F.2d 1225 (9th Cir. 1984)............................. 3, 4
Mainero v. Gregg,
     164 F.3d 1199 (9th Cir. 1999)............................. 11
Martin v. Warden, Atlanta Pen.,
     993 F.2d 824 (11th Cir. 1993).............................. 3
Respublica v. De Longchamps, Court of Oyer & Terminer of Penn.,
     1 U.S. 111 (1787)......................................... 10
Salerno v. United States,
     878 F.2d 317 (9th Cir. 1989)..................... 3, 13, 20
Santos v. Thomas,
     830 F.3d 987 (9th Cir. 2016) (en banc)................. 12, 14
United States ex rel. McNamara v. Henkel,
     46 F.2d 84 (S.D.N.Y. 1912)................................. 13

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Botero,

    604 F. Supp. 1028 (S.D. Fla. 1985)......................... 22

United States v. Kin-Hong,

    83 F.3d 523 (1st Cir. 1996)............................. 5, 13

United States v. Kin-Hong,

    110 F.3d 103 (1st Cir. 1997)........................... 12, 13

United States v. Leitner,

    784 F.2d 159 (2d Cir. 1986)................................ 20

United States v. Taitz,

    130 F.R.D. 442 (S.D. Cal. 1990)............................ 4

United States v. Williams,

    611 F.2d 914 (1st Cir. 1979)........................... 20, 21

Wright v. Henkel,

    190 U.S. 40 (1903)................................... 3, 4, 11


U.S. STATUTES

18 U.S.C. § 3141............................................... 3

18 U.S.C. § 3141(a)........................................... 3

18 U.S.C. § 3142.............................................. 3

18 U.S.C. § 3156(a)(2)........................................ 3

18 U.S.C. § 3184.......................................... 1, 2, 3


FOREIGN STATUES

Spanish Penal Code, art. 147............................... 1, 2

Spanish Penal Code, art. 163............................... 1, 2

Spanish Penal Code, art. 165............................... 1, 2

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                      PAGE

Spanish Penal Code, art. 169.................................. 1, 2

Spanish Penal Code, art. 171..................................

Spanish Penal Code, art. 202.................................. 1, 2

Spanish Penal Code, art. 203.................................. 1, 2

Spanish Penal Code, art. 237.................................. 1, 2

Spanish Penal Code, art. 241.................................. 1, 2

Spanish Penal Code, art. 242.................................. 1, 2

Spanish Penal Code, art. 390................................... 2

Spanish Penal Code, art. 392................................... 2

Spanish Penal Code, art. 570 bis.............................. 1, 2


TREATIES

Supplementary Extradition Treaty with the United Kingdom,

        June 25, 1985, U.S.-U.K., reprinted in

        S. Exec. Rep. No. 99-17 (1986)................................

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Kingdom of Spain ("Spain") is prosecuting fugitive CHRISTOPHER PHILIP AHN ("AHN" or "the fugitive") for his role in the February 22, 2019, attack of the Embassy of the Democratic People's Republic of Korea ("North Korea") in Madrid, Spain ("the Embassy"). On April 12, 2019, Judge Jose de la Mata Amaya of the Central Court of Investigation No. 5, National High Court, in Madrid, Spain, issued a warrant for AHN's arrest for (1) Breaking and Entering, in violation of Articles 202 and 203 of the Spanish Penal Code; (2) Illegal Restraint, in violation of Articles 163 and 165 of the Spanish Penal Code; (3) Threats, in violation of Articles 169 and 171 of the Spanish Penal Code; (4) Robbery with Violence and Intimidation, in violation of Articles 237, 241, and 242 of the Spanish Penal Code; (5) Causing Injuries, in violation of Article 147 of the Spanish Penal Code; and (6) Criminal Organization, in violation of Article 570 bis of the Spanish Penal Code.  Also on April 12, 2019, the Honorable Jacqueline Chooljian, United States Magistrate Judge for the Central District of California, issued a warrant for AHN's arrest based on a Complaint for Provisional Arrest with a View Toward Extradition (18 U.S.C. § 3184).  (See Docket No. 1.)

On April 18, 2019, the United States Marshals Service arrested AHN in Los Angeles, California, when he arrived at the residence of ADRIAN HONG CHANG ("HONG CHANG"), his co-conspirator, and the leader

and organizer of the February 22, 2019, attack on the Embassy.[1]  AHN initially appeared in this Court on the following day, at which time the Court continued the hearing until April 23, 2019. (See Docket No. 7.)  On April 23, 2019, following a contested hearing, this Court denied AHN's request for bail and ordered him detained pending extradition.  (See Docket No. 11.)  Because the Court did not find any "special circumstances," it did not address whether AHN posed a risk of flight or a danger to the community.  (See id.)

Over a month later, on June 6, 2019, AHN filed the instant application, in which he asked the Court to reconsider its detention order.  (See Docket No. 33.)  To support his application, AHN raises several of the same claims for "special circumstances" that he made at the April 23, 2019, hearing, including financial and emotional hardship, broad support from the community, and lack of being a flight risk.  (See id. at 13-14, 21-23.)  In addition, he now asserts that the purported availability of bail in Spain and what he anticipates will be protracted delays in the extradition process are "special circumstances."  (See id. at 16-19.)  He also claims that the "unique" circumstances of this case, including his activities as

---

[1] HONG CHANG is sought for extradition, pursuant to 18 U.S.C. § 3184 and the relevant extradition treaty, to Spain, where he is being prosecuted for (1) Breaking and Entering, in violation of Articles 202 and 203 of the Spanish Penal Code; (2) Illegal Restraint, in violation of Articles 163 and 165 of the Spanish Penal Code; (3) Threats, in violation of Articles 169 and 171 of the Spanish Penal Code; (4) Robbery with Violence and Intimidation, in violation of Articles 237, 241, and 242 of the Spanish Penal Code; (5) Causing Injuries, in violation of Article 147 of the Spanish Penal Code; (6) Falsifying a Document, in violation of Articles 390 and 392 of the Spanish Penal Code; and (7) Being a Member of Criminal Organization, in violation of Article 570 bis of the Spanish Penal Code.

Notwithstanding a $10,000 reward for information leading to his capture and arrest, HONG CHANG has evaded arrest and remains a fugitive from justice.

2

a North Korean dissident, Spain's diplomatic relations with North Korea, and the nationality of the victims of the February 22, 2019, attack on the Embassy qualify as "special circumstances." (See id. at 11-16.)  Finally, AHN asserts that he is entitled to bail because he is neither a flight risk nor danger to the community.  (See id. at 22-25.)

As set forth in detail below, these assertions fail. Accordingly, the United States respectfully requests that the Court deny AHN's application and continue to detain him pending extradition.

## II.   ARGUMENT

### A.   AHN Fails to Establish Special Circumstances that Warrant Release on Bail

#### 1.   Legal Standard

The federal statute governing extradition procedures in the United States pursuant to treaties with other nations, 18 U.S.C. § 3184 et seq., does not provide for bail.[2]  Moreover, the presumption against bail in foreign extradition matters, absent "special circumstances," is well-settled.  See Wright v. Henkel, 190 U.S. 40, 63 (1903); In re Extradition of Kirby, 106 F.3d 855, 858 (9th Cir. 1996); Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989); see also In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir. 1992); Kamrin v. United States, 725 F.2d 1225, 1228 (9th

---

[2] It is well-settled that an extradition proceeding is not a criminal case.  See, e.g., Kamrin v. United States, 725 F.2d 1225, 1227-28 (9th Cir. 1984); Martin v. Warden, Atlanta Pen., 993 F.2d 824, 829 (11th Cir. 1993).  Consequently, the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., and its criteria governing the allowance and the amount of bail in United States criminal cases do not apply in extradition matters.  The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts.  See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).

Cir. 1984); In re Extradition of Antonowicz, 244 F. Supp. 3d 1066, 1071 (C.D. Cal. 2017); In re Extradition of Beresford-Redman, 753 F. Supp. 2d 1078, 1087 (C.D. Cal. 2010); Garcia v. Benov, No. CV 08-07719 MMM (CWx), 2009 WL 6498194, at *2 (C.D. Cal. Apr. 13, 2009); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1035 (C.D. Cal. 2006); In re Extradition of Kyung Joon Kim, No. CV 04-3886-ABC(PLA), 2004 WL 5782517, at *1 (C.D. Cal. July 1, 2004).  The rationale behind this presumption is to preserve important foreign relations policy interests.  See In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1214 (D. Nev. 1993).  As the United States Supreme Court noted,

> The demanding government, when it has done all that the
> treaty and the law require it to do, is entitled to the
> delivery of the accused on the issue of the proper warrant,
> and the other government is under obligation to make the
> surrender; an obligation which it might be impossible to
> fulfill if release on bail were permitted.  The enforcement
> of the bond, if forfeited, would hardly meet the
> international demand; and the regaining of the custody of
> the accused obviously would be surrounded with serious
> embarrassment.

Wright, 190 U.S. at 62.  In other words, "[i]f the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives."  United States v. Taitz, 130 F.R.D. 442, 444 (S.D. Cal. 1990) (citation omitted).

In light of these foreign policy interests and the duty of the United States to comply with its treaty obligations, courts have held

1    that a fugitive must overcome two hurdles to rebut the presumption

2    against release on bail.  First, "[t]he person facing the extradition

3    hearing has the burden of establishing 'special circumstance.'"  Kim,

4    2004 WL 5782517, at *2 (quotation omitted).  "Once special

5    circumstances are shown, the person must also demonstrate that he or

6    she will not flee or pose a danger or any other person or to the

7    community."  Id. (citations omitted).[3]

8          "This standard of 'special circumstances' for release on bail

9    for persons involved in a foreign extradition proceeding 'is a more

10   demanding standard that for ordinary accused criminals awaiting

11   trial.'"  In re Extradition of Mainero, 950 F. Supp. 290, 294 (S.D.

12   Cal. 1996) (quoting Hu Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d

13   Cir. 1981)).  "Special circumstances are limited to situations in

14   which the justification for release is pressing as well as plain."

15   See United States v. Kin-Hong, 83 F.3d 523, 524 (1st Cir. 1996)

16   (internal quotations and citations omitted).  They "must be

17   extraordinary and not factors applicable to all defendants facing

18   extradition."  Mainero, 950 F. Supp. at 294 (citing Smyth, 976 F.2d

19   at 1535-36); see Beresford-Redman, 753 F. Supp. 2d at 1087 ("The

20   Ninth Circuit has explained that issues common to all incarcerated

21   defendants do not qualify as 'special circumstances.'").  Although

22   there is no finite list of what factors may constitute special

23   circumstances, courts have narrowly circumscribed the set of factors

24   _____

25         [3] The standard by which a defendant must demonstrate "special
     circumstances" is unsettled.  Some courts have required the defendant
26   to satisfy a preponderance of evidence standard, see Santos, 473 F.
     Supp. 2d at 1036 n.4, while others have required clear and convincing
27   evidence, see Nacif-Borge, 829 F. Supp. at 1214-15; In re Extradition
     of Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996). Other courts have
28   found it unnecessary to resolve the issue because of the difficulty
     satisfying either standard. See, e.g., In re Extradition of Perez-
     Cueva, No. 16-0233M, 2016 WL 884877 (C.D. Cal. Mar. 7, 2016).

that may permit "special circumstances."  <u>See, e.g.</u>, <u>In re</u>
<u>Extradition of Sutton</u>, 898 F. Supp. 691, 694 (E.D. Mo. 1995) ("Courts
have taken a limited view of what constitutes 'special
circumstances.'").  Therefore, even though the determination of
special circumstances "is left to the sound discretion of the trial
judge," <u>Santos</u>, 473 F. Supp. 2d at 1036, a judge must exercise
restraint.  <u>See</u> <u>Beresford-Redman</u>, 753 F. Supp. 2d at 1087 (quoting <u>In</u>
<u>re Molnar</u>, 182 F. Supp. 2d 684, 688 (N.D. Ill. 2002) ("Determining
whether certain facts quality as a "special circumstance' requires 'a
cautious judgment by the judge, taking into account the totality of
the facts and having a healthy respect for this country's
international treaty agreements.")).

In the instant case, AHN lists several factors that he asserts
satisfy his burden of demonstrating "special circumstances."  But as
set forth below, none of these factors, either individually or in the
aggregate, satisfies the stringent standard for permitting his
release on bail.

    2.   <u>The Circumstances of This Case Are Not So "Unique"</u>
        <u>that They Amount to a "Special Circumstance"</u>

In his application, AHN attempts to transform a straight-forward
extradition case into something more by highlighting his activities
as a North Korean dissident and his theory that Spain's diplomatic
relations with North Korea put him in jeopardy should he be
surrendered to Spain.  (<u>See</u> Docket No. 33 at 12-19.)  Without
specific evidence, he also urges the Court to disregard the
allegations of the victims of the February 22, 2019, attack of the
Embassy simply because they are North Korean officials.  (<u>See</u> <u>id.</u> at
13.)  According to AHN, these "facts" somehow make this case "unique"

and within the narrow holding of <u>In re Extradition of Kirby</u>, 106 F.3d 855 (9th Cir. 1996). He is incorrect.

In <u>Kirby</u>, the Ninth Circuit affirmed the decision to release members of the Irish Republican Army, who had escaped from a British prison in Northern Ireland, on bail pending their extradition proceedings. 106 F.3d at 865. In so doing, the appellate court noted the "weaknesses" of the four "special circumstances" relied upon by the district court, including the years-long delay in the proceedings prior to the bail hearing, but ultimately upheld the district court's finding that such circumstances warranted the fugitives' release. <u>Id.</u> at 864-65.

Contrary to AHN's suggestion, the Ninth Circuit did not create a new "special circumstance" based on its conclusion that the fugitives were "objects of concern of many Americans." <u>Cf. id.</u> at 864. Rather, the appellate court noted that the "troubles between the Protestants and Catholics in Northern Ireland have in the past engaged and continue to engage the attention of citizens of the United States, including the President and the Secretary of State," and determined that it was appropriate to "consider the consequences of a decision to grant or withhold bail within this larger context." <u>Id.</u> at 865. Accordingly, the court of appeals justified its decision to rely on the weak "special circumstances" identified by the district court as follows:

> We are reasonably convinced that <u>a grant of bail will contribute more to promoting harmony</u> between the supporters of the cause of the Catholics in Northern Ireland and those whose interests are otherwise, <u>than would a denial of bail because of any dissatisfaction we might have with the</u>

7

1    "special circumstances" upon which the district court

2    relied.

3   Id. (emphasis added).   In other words, after considering certain

4   political interests relevant to the case, in connection with the

5   "special circumstances" found by the district court, the Ninth

6   Circuit decided to affirm the district court's decision to grant

7   bail.[4]   Id.

8        Thus, AHN's attempt to draw attention to the political aspects

9   of this case, by relying on letters from various organizations, and

10

11        _____

        [4] To further justify its decision affirming the district court's
12   grant of bail, the Ninth Circuit explained that it believed that
     doing so was consistent with its obligations under Article 3 of the
13   supplementary extradition treaty between the United States and the
     United Kingdom.   See Kirby, 106 F.3d at 865.   This provision - which
14   does not appear in the treaty applicable here - provided in relevant
     part that,
15
        (a) Notwithstanding any other provision of this
16        Supplementary Treaty, extradition shall not occur if the
        person sought establishes to the satisfaction of the
17        competent judicial authority by a preponderance of the
        evidence that the request for extradition has in fact been
18        made with a view to try or punish him on account of his
        race, religion, nationality, or political opinions, or that
19        he would, if surrendered, be prejudiced at his trial or
        punished, detained or restricted in his personal liberty by
20        reason of his race, religion, nationality or political
        opinions.
21
22   Supplementary Extradition Treaty with the United Kingdom, June 25,
     1985, U.S.-U.K., reprinted in S. Exec. Rep. No. 99-17, at 10(1986).
23   (A true and correct copy of this Senate report is attached to
     Declaration of John J. Lulejian, dated 06/13/2019, as Exhibit A.)
24   Further, the Senate Executive Report notes that the United States and
     United Kingdom signed the supplemental treaty after three United
25   States courts "denied requests by the United Kingdom for the
     extradition of members of the Provisional Irish Republican Army
26   accused or convicted of committing acts of violence on the grounds
     that the offense were political."   Id. at 2.

27

28

                                  8

1    the op-ed pieces, articles, and statements of supporters of Free

2    Joseon, including co-conspirator HONG CHANG's counsel, are

3    misplaced.[5]  (See Docket No. 33 at 11-14.)  As explained above, Kirby

4    does not support his argument that such "concern . . . rises to the

5    level of a special circumstance."  (See id. at 14.)

6         Moreover, AHN only presents those facts that support his

7    position, and ignores the other paramount interests at play in this

8

9         [5] AHN states that the attack of the Embassy "has received
10   extensive media attention and inspired various commentary . . . ."
     (Docket No. 33 at 12.)  However, a careful analysis of the media and
11   the origins of the stories reveals an orchestrated effort by HONG
     CHANG, Free Joseon, and its supporters to rewrite the narrative so
12   that it portrays HONG CHANG, AHN, and those who attacked the Embassy
     in the best possible light.  See, e.g., Victoria Kim, Attorneys for
13   ex-Marine accused in North Korean embassy attack say he faces
     retaliation, Los Angeles Times, Jun. 7, 2019,
14   https://www.latimes.com/world/asia/la-fg-north-korea-embassy-attack-
     christopher-ahn-20190607-story.html (statements from Free Joseon);
15   Eric Shawn: China and the 'free North Korea prosecution, Fox News,
     Jun. 5, 2019, https://video.foxnews.com/v/6046252898001/ (interview
16   with HONG CHANG's attorney); Barbara Demick & Victoria Kim, A bizarre
     takeover of North Korea's embassy in Spain has an L.A. man on the
17   run, Los Angeles Times, May 15, 2019,
     https://www.latimes.com/world/asia/la-fg-north-korea-madrid-embassy-
18   20190515-story.html (statements from HONG CHANG's attorney); Eric
     Shawn: "Free North Korea" activists targeted by US, Fox News, Apr.
19   28, 2019, https://video.foxnews.com/v/6030854330001/ (interview with
     HONG CHANG's attorney); Dan De Luce & Andrew Blankstein, Dissidents
20   battling North Korea's Kim regime find they are at odds with Trump
     admin, NBC News, Apr. 25, 2019, https://www.nbcnews.com/news/north-
21   korea/dissidents-battling-north-korea-s-kim-regime-find-they-are-
     n998131 (statements from HONG CHANG's attorney); David Shortell &
22   Brian Todd, Ringleader of North Korean Embassy raid in hiding from
     hit squads, attorney says, CNN, Apr. 22, 2019,
23   https://www.cnn.com/2019/04/22/politics/north-korea-madrid-embassy-
     raid/index.html (statements of HONG CHANG's attorney); Statement from
24   Ambassador Lee Wolosky on arrests of US Nationals, Free Joseon, Apr.
     19, 2019, https://www.cheollimacivildefense.org/post/2019-4-
25   19_StatementfromAmbassadorLeeWoloskyonarrestsofUSNationals_77027/
     (statement of HONG CHANG's attorney); Facts About Madrid -
26   Información Sobre Madrid, Free Joseon, Mar. 26, 2019,
     https://www.cheollimacivildefense.org/post/2019-3-
27   26_FactsAboutMadridInformaci%C3%B3nSobreMadrid_34286/ (statement by
     Free Joseon).

28        A fugitive should not be allowed to create a "special
     circumstance" by having a well-financed media campaign.

case, including the importance of protecting diplomatic missions and those who staff them.  See, e.g., Republica v. De Longchamps, Court of Oyer & Terminer of Penn., 1 U.S. 111, 116 (1787) (upholding validity of indictment charging assault on French diplomat and stating, "The person of a public minister is sacred and inviolable. Whoever offers any violence to him, not only affronts the Sovereign he represents, but also hurts the common safety and well being of nations; he is guilty of a crime against the whole world."); Finzer v. Berry, 798 F.2d 1450, 1455 (D.C. Cir. 1986) ("The principle that host states have a special responsibility to ensure that foreign embassies and the personnel inside them are free from threats of violence and intimidation is solidly entrenched in the Law of Nations.") (internal quotation and citation omitted), aff'd in part and rev'd in part, Boos v. Berry, 485 U.S. 312 (1988).  Spain has an interest in prosecuting individuals, particularly foreign nationals, who enter into that sovereign nation, use violence, threats of violence, and intimidation against members of the diplomatic missions in that country.  Spain's desire to prosecute AHN and those responsible for attacking the Embassy is important not only for Spain's own national interest and internal security, but also to comply with the rigorous demands of diplomacy and the promotion of international comity.

In addition to addressing these foreign relations concerns, the Court should also disregard AHN's suggestion that while the "United States is currently the safest place in the world for [him]," if he is surrendered to Spain, "he may be exposed to violent – and possibly fatal – retribution by North Korean agents."  (Docket No. 33 at 19 (emphasis added).)  As an initial matter, AHN offers no evidence that

Spanish authorities will not protect him from retaliation by North
Korea.  Further, if the Court were to ignore the weaknesses of AHN's
purported "special circumstances" because of AHN's supposition that
he is not safe in Spain, relations with that nation could be
strained.  Supporting our allies and law enforcement partners also
garners the "attention of citizens of the United States, including
the President and the Secretary of State."  Kirby, 106 F.3d at 865.
In any event, the Court is precluded from considering what treatment
AHN may face if he is extradited to Spain under the long-standing
rule of non-inquiry.  See Mainero v. Gregg, 164 F.3d 1199, 1205 (9th
Cir. 1999) ("The so-called 'rule of non-inquiry' recognizes that
'[a]n extradition court will generally not inquire into the
procedures or treatment which await a surrendered fugitive in the
requesting country.'") (citation omitted).

In short, having a "unique" circumstance is not tantamount to
having a "special circumstance," as AHN urges.  See Borodin v.
Ashcroft, 136 F. Supp. 2d 125, 129, 132 (E.D.N.Y. 2001) (noting that
"[m]any extradition cases entail unusual and unfortunate
circumstances").  In this case, even if AHN is an "object[] of
concern" to certain Americans, this status "cannot be a 'special
circumstance' within the meaning of Wright, unless [the Court is]
prepared to say that the normal rules of extradition are not going to
apply to [certain individuals] by virtue of who they are."  See In re
Extradition of Heilbronn, 773 F. Supp. 1576, 1581-82 (W.D. Mich.
1991) (noting that "[t]he court is not aware of any authority for
carving out such an exception").

3.    The Nationality of the Victims in This Case is Not a "Special Circumstance"

AHN suggests that he should be released on bail because his extradition is sought based on allegations by North Korean victims, although he appears to acknowledge that no court has previously recognized such a "special circumstance."[6]  (See Docket No. 33 at 14-16.)  He claims that because Free Joseon's attack on the Embassy was designed to embarrass North Korea, the victims have "every incentive to present a self-serving account of [the attack of the Embassy] in order to protect themselves or to deter further acts of political dissent."  (Id. at 13.)  Even putting aside the fact that the Spanish court reviewed and adopted the facts developed by the investigation by Spanish authorities, including the documentation of a diplomat's spouse's injuries incurred when she escaped from the Embassy (see Docket No. 1 at ¶ 6(f).), such allegations are unsupported by the record.

Moreover, this Court should not entertain such claims, as the proper forum for AHN to challenge the accounts of the North Korean officials is his trial in Spain, and not these extradition proceedings.  See Santos v. Thomas, 830 F.3d 987, 991 (9th Cir. 2016) (en banc) ("'[A] preliminary hearing is not a minitrial of the issue of guilt; rather, its function is the more limited one of determining whether probable cause exists to hold the accused for trial.  An extradition hearing similarly involves a preliminary examination of the evidence and is not a trial.'") (internally quoting United States

---

[6] The United States rejects AHN's attempt to discount the veracity of the victims' statements to the Spanish authorities for no reason other than their national origin.

12

1  v. Kin-Hong, 110 F.3d 103, 120 (1st Cir. 1997)).  As set forth above,

2  the case at hand is a straight-forward extradition case, where Spain

3  seeks to prosecute AHN for coming into that nation and attacking an

4  embassy and diplomats under Spanish protection.  The fact that the

5  embassy belongs to North Korea and the victims are from that nation

6  does not warrant AHN's release on bail.

7            4.   The Possibility of Delayed Extradition and Appellate

8                 Proceedings is Not a "Special Circumstance"

9       The Ninth Circuit has recognized that "'unusual delay in the

10  appeal process' can be a 'special circumstance' that will justify

11  bail . . . ."  See Kirby, 106 F.3d at 863 (quoting Salerno, 878 F.2d

12  at 317).  However, the delay must be something beyond what are simply

13  "factors applicable to all defendants facing extradition."  Mainero,

14  950 F. Supp. at 294; see Smyth, 976 F.2d at 1535-36 ("The need to

15  consult with counsel, gather evidence and confer with witnesses,

16  although important, is not extraordinary; all incarcerated defendants

17  need to do these things.").  Further, the delay caused by or

18  attributed to the fugitive is not a "special circumstance."  See,

19  e.g., Kin-Hong, 83 F.3d at 525 (rejecting bail claim where "[t]o the

20  extent that there has been some delay, [the petitioner] himself is

21  partly responsible"); Heilbronn, 773 F. Supp. at 1581 (court

22  unsympathetic to petitioner who requested several delays); United

23  States ex rel. McNamara v. Henkel, 46 F.2d 84 (S.D.N.Y. 1912) (delay

24  justifies bail "only where the hearing date comes and the complainant

25  is not ready to proceed").

26       In his application to the Court, AHN states that he "must . . .

27  explore every available legal avenue to challenge his extradition,

28  including habeas petitions and all possible appeals."  (Docket No. 33

                                   13

at 19.)  Although he claims that North Korea's alleged involvement "will raise novel legal issues that will likely be matters of first impression" (id.), he does not explain how that nation will be able to involve itself in, or delay, the extradition, which has been requested by Spain to the United States.  The fact that Spain has diplomatic relations with North Korea is of no relevance to the extradition.  As the United States represented to the Court in its Reply in Support of Its Oral Motion to Unseal the Docket, and at the April 23, 2019, hearing, "the United States is not seeking to extradite AHN to North Korea – a country with which it has no extradition treaty – but instead to Spain."  (Docket No. 23 at 7 n.1.)  "[I]f the United States surrenders AHN to Spain, Article XIII of extradition treaty prohibits Spain from extraditing AHN to North Korea without first obtaining the consent of the United States."  (Id.)

AHN also does not elaborate on reasons why his extradition matter will be unusually lengthy or complex, nor is the government aware of any such reasons.  See Kirby, 106 F.3d at 863; see also Santos, 830 F.3d at 990 ("Once the warrant is issued, the district court, which may include a magistrate judge, conducts a hearing to determine whether there is evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or, in other words, whether there is probable cause.") (internal quotation and citations omitted).  In other words, AHN does not describe why there would be any delays, other than those generated by litigation decisions entirely within his control, such as seeking a writ of habeas corpus or appeals thereof.  See Smyth, 976 F.2d at 1535-36. Accordingly, he has failed to demonstrate a special circumstance

14

based on alleged delay.

5. Availability of Bail in Spain is Not a "Special Circumstance"

AHN asserts that because he might be entitled to bail in Spain, he should be released on bail here during the extradition proceedings. (See Docket No. 33 at 19-21.) To support his position, AHN relies on the opinions of two professors of Spanish law who opine that "a Spanish court would very likely render judgment in favor of [AHN] being put on pretrial release . . . ."[7] (Docket No. 33-1 (emphasis added).) Because a Spanish court – and not the professors hired by AHN – would make the final decision as to whether AHN would receive bail, the professors' opinion is no more than an educated guess. Furthermore, even if a guarantee of bail in Spain qualified as a "special circumstance," the possibility of bail does not. See In re Extradition of Sacirbegovic, 280 F. Supp. 2d 81, 86-87 (S.D.N.Y. 2003) ("Here, at best, [the fugitive] has shown that the [requesting country's] bail statute would not preclude his release on bail. . . . [T]here is no basis for [the fugitive's] suggestion that the mere possibility of bail in the requesting nation constitutes a

---

[7] The professors hired by AHN also opine as to the probability of bail being granted to a defendant in a case similar to AHN's in Spanish extradition proceedings. (See Docket No. 33-1 at 98-99, 112-13.) Even though the professors can only speculate as to what a Spanish court might do in that situation, AHN suggests that a U.S. court should apply "the exact same bail standards that Spain applies to its own citizens facing extradition." (Docket No. 33 at 20-21.) However, he offers no support for this bold claim.

The extradition treaty is silent as to whether the United States or Spain must or should detain individuals pending extradition. Therefore, the availability of bail in Spain to a Spanish citizen subject to extradition is neither a requirement nor relevant for this Court. Cf. Charlton v. Kelly, 229 U.S. 447, 476 (1913) ("extradition treaties need not be reciprocal, even in the matter of the surrendering of citizens").

15

1  special circumstance.").

2     It is well-settled that the requesting country's bail practices
3  have no bearing on the United States' mandatory treaty and statutory
4  obligations to deliver fugitives to that country.  See In re
5  Extradition of Martinelli Berrocal, 263 F. Supp. 3d 1280, 1298 (S.D.
6  Fla. 2017); Antonowicz, 244 F. Supp. 3d at 1071; Drumm v. McDonald,
7  Civ. A. No. 15-14221-RGS, 2016 WL 111411, at *4, *6 (D. Mass. Jan.
8  11, 2016); In re Extradition of Azizi, No. 5:14-xr-90282 PSG, 2014 WL
9  1995083, at *2-3 (N.D. Cal. May 13, 2014); Kim, 2004 WL 5782517, at
10 *2; In re Extradition of Siegmund, 887 F. Supp. 1383, 1386-87 (D.
11 Nev. 1995).  As one court succinctly noted, if the availability of
12 bail in the foreign country were a special circumstance justifying
13 bail in the United States, then:

14     courts [would be forced] to make searching reviews of
15     foreign law to determine whether bail is appropriate for a
16     given defendant in a given country for a given
17     offense . . . .  That would be an undesirable practice: it
18     might well be unworkable, and, if applied widely, it could
19     eviscerate, at least with respect to requesting countries
20     whose domestic practice, like our own, strongly favors
21     bail, the doctrine set by the Supreme Court that bail is
22     the exception, not the rule, in international extradition
23     cases.

24 Id. (internal citations and quotes omitted).  This is because,
25     [A]n extradition treaty between sovereign nations is
26     essentially a contract, and the concern in an international
27     extradition case is not to mirror the internal bail
28     practices of the requesting country, but, rather, to

16

1     deliver the extraditee to that country if the conditions

2     precedent to extradition, as set forth in the treaty, are

3     satisfied.   To say that the extraditee would have been

4     granted bail in the requesting country, had he been

5     arrested there, or that he will be granted bail once

6     returned there, thus misses the point.

7  Id.

8         Accordingly, whether AHN could receive bail in Spain is neither

9  relevant nor a "special circumstance."

10             6.   Financial and Emotional Hardships Are Not "Special

11                  Circumstances"

12        As he did on April 23, 2019, AHN again asserts that he should be

13  released on bail because he helps care for his mother and

14  grandmother.  (See Docket No. 33 at 21-22.)  At that hearing, this

15  Court found that the financial and emotional hardships experienced by

16  his family did not rise to the level of a "special circumstance."

17  (See id. at 21.)  Nothing presented in his latest filing changes that

18  fact.[8]

19        While the United States is sympathetic, the fact remains that

20  family members experience financial and emotional "hardship" in

21  almost every case where one person is detained.  As one court noted,

22        [T]hat possibility [of unwelcome financial strain], however

23        unfortunate, is present in almost every case where a

24        defendant with family faces detention pending adjudication.

25        Accordingly, the fact that the defendant's family depends

26

27        [8] The government also notes that while AHN emphasizes the
    support that must provide to his mother and grandmother, the
28  obligations to his family did not stop him from traveling to Spain to
    participate in the attack of the Embassy early this year.

17

1   on him for financial and emotional support is not a special

2   circumstance weighing in favor of release.

3   In re Extradition of Drumm, 150 F. Supp. 3d 92, 99 (D. Mass.

4   2015); see Antonowicz, 244 F. Supp. 3d at 1072 ("The Court does

5   not intend to understate the financial and emotional burdens

6   that detention causes, but those burdens are present in almost

7   all cases and therefore do not constitute a 'special

8   circumstance.'") (internal quotation and citation omitted);

9   Beresford-Redman, 753 F. Supp. 2d at 1087 ("Emotional hardship

10  for the family of a fugitive facing extradition is present in

11  almost all cases and therefore does not constitute a 'special

12  circumstance.'") (internal quotation and citation omitted); In

13  re Extradition of Mahabir, 858 F. Supp. 504, 508 (D. Md. 1994)

14  ("A defendant's incarceration regularly creates difficulties for

15  him and his family."); see also Smyth, 976 F.2d at 1535-36

16  (special circumstances must be "extraordinary" and not factors

17  applicable to all fugitives facing extradition).

18      Furthermore, AHN acknowledges that others help take care of his

19  mother and grandmother. (See Docket No. 33 at 21-22.) While it may

20  be difficult, his brother, Daniel Ahn, can continue to care for and

21  support his mother and grandmother. (See id. at 21; Docket No. 33-1

22  at 12-15.) In addition to AHN's brother, there are other family

23  members who can help care for and support the two women, including

24  Gracie Ahn (AHN's wife) and Jason Kim (AHN's brother-in-law). (See

25  Docket No. 33-1 at 10-11, 16-17.) Further, AHN has a broad network

26  of support, including Pastor Song JaeHo and the congregants of the

27  Halleluyah Korean Church, who may be able to offer AHN's mother and

28  grandmother support, in addition to the spiritual support that they

18

currently provide.  (See id. at 30.)  In addition, AHN and HONG
CHANG's supporters have setup a new website protesting AHN arrest
(Freedom for Free Joseon, Jun. 13, 2019, https://www.freefj.is/) and
a GoFundMe page to raise money for AHN (gofundme:  Fight US Marine
Extradition to North Korea, Jun. 13, 2019,
https://www.gofundme.com/help-us-marine-chris-ahn).

Accordingly, any hardship suffered as a result of AHN's
detention during this extradition proceeding cannot justify his
release.

> 7.   AHN's Character and Support in the Community are Not
>      "Special Circumstances"

To the extent AHN contends that his character and support in the
community are "special circumstances," he is incorrect.  Instead,
these factors are more appropriately considered when conducting the
independent flight risk analysis.  See Nacif-Borge, 829 F. Supp. at
1220 ("More often, the character and background of a person subject
to extradition are considered in regard to risk of flight and danger
to the community rather than as a special circumstance."); see also
In re Extradition of Sidali, 868 F. Supp. 656 (D.N.J. 1994)
(rejecting "extraordinary character" based on employment, family
ties, no prior record, and community respect as special
circumstance); In re Extradition of Valles, 36 F. Supp. 2d 1228, 1231
(S.D. Cal. 1998) (fugitive's past conduct and community ties used to
assess flight risk).  Further, letters of support vouching for a
defendant's trustworthiness do not qualify as a special circumstance.
See Beresford-Redman, 753 F. Supp. 2d at 1089.  Also, the fugitive's
alleged compliance with the terms of release – something expected of
every person under supervision by a court - is not a "special

circumstance." See United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979) (fugitive's "arguable acceptability as a tolerable bail risk" is not a special circumstance).

AHN's suggestion that his support in the community is a "special circumstance," fails because courts, including this one, have rejected such an assertion. See, e.g., Beresford-Redman, 753 F. Supp. 2d at 1089-90 (denying bail, despite strong family and community ties in United States, finding that letters in support from friends, family, and business associates are not a special circumstance justifying bail); Azizi, 2014 WL 1995083, at *9 (denying bail despite individual having no criminal record, the alleged offenses were non-violent, and strong ties to community); Nacif-Borge, 829 F. Supp. at 1220 (finding that eighty-five letters in support, attesting to fugitive's character, did not constitute special circumstance justifying bail); Sutton, 898 F. Supp. at 696 ("[A]n extradition fugitive's character and background . . . are not by themselves a special circumstance sufficient to require release on bail in an international extradition case.").

8. Neither AHN's Alleged Lack of Flight Risk nor Danger to the Community is a "Special Circumstance"

AHN claims that his lack of flight risk and danger to the community amount to a "special circumstance." (See Docket No. 33 at 22-25.) However, these considerations are an independent condition precedent for releasing a fugitive on bail, and do not factor into the "special circumstances" inquiry. See, e.g., Salerno, 878 F.2d at 317-18 (lack of flight risk "is not a criteria for release in an extradition case"); United States v. Leitner, 784 F.2d 159, 161 (2d Cir. 1986) ("Even a low risk of flight" is not a circumstance

sufficiently "unique" to constitute a special circumstance."); <u>In re Extradition of Russell</u>, 805 F.2d 1215, 1216 (5th Cir. 1986) ("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); <u>Williams</u>, 611 F.2d at 915 ("even applicant's arguable acceptability as a tolerable bail risk" is not "special circumstance"); <u>Santos</u>, 473 F. Supp. 2d at 1035-36 ("The party seeking release on bail in an international extradition case also must demonstrate that there is no risk he will fail to appear for further extradition proceedings and that he is not a danger to the community, but those factors are not special circumstances which alone justify release on bail.").  Moreover, as explained further below, AHN does in fact present a risk of flight and danger to the community.

In short, AHN fails to sufficiently establish a single factor that would warrant "special circumstances."  Even considering the factors that he alludes to together in a favorable light, AHN falls well short of carrying his burden of establishing "special circumstances" for the purposes of overcoming the strong presumption against bail.

**B.   AHN Fails to Establish that He Does Not Pose a Risk of Flight or a Danger to the Community**

In addition to being unable to meet his initial burden of identifying any "special circumstances" in his case, AHN also fails to meet his second burden of establishing that he is neither a flight risk nor a danger to the community.

**1.   <u>AHN Poses a Risk of Flight</u>**

As an initial matter and notwithstanding his claims to the contrary, AHN is a significant flight risk.  According to the

information provided by Spanish authorities, AHN fled immediately after committing the attack on the Embassy, evading police in either an official vehicle stolen from the Embassy or with co-conspirator, HONG CHANG, in an Uber, using a fraudulent account registered under one of HONG CHANG's aliases.  (See Docket No. 1 at ¶¶ 6(j)-(k).)  The fact that AHN has already sought to evade prosecution in Spain is indicative of his risk of flight in the United States.  Cf. United States v. Botero, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges.  The intent is the same—the avoidance of prosecution.") (citing Jhirad v. Ferrandina, 536 F.2d 478, 483 (2d Cir. 1976)).

    In addition, AHN has a strong incentive to flee, as he faces a significant prison sentence – of potentially more than ten years - if he is extradited and convicted in Spain of the six crimes for which his extradition is sought.  See, e.g., Martinelli Berrocal, 263 F. Supp. 3d at 1305 (fugitive's age coupled with "a potential twenty-one-year sentence in Panama" rendered fugitive "serious flight risk"); Perez-Cueva, 2016 WL 884877, at *3 (seriousness of allegations against fugitive "militates against release on bail"); In re Extradition of Shaw, No. 14-MC-81475, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015) ("[T]he Defendant is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee."); In re Extradition of Adame, Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682, at *7-8 (S.D. Tex. Mar. 25, 2013)

(fugitive "has virtually no incentive to appear at his extradition
hearing, where, due to the Government's low burden of proof, there is
a significant risk that he will be formally extradited to Mexico").
He also asserts that he is subject to death threats and retaliation
by North Korea for his actions.  (See Docket No. 33 at 17-18.)  While
AHN claims that his family is the incentive for him to not to flee,
as set forth above, his family obligations did not stop him from
traveling to Spain for the February 22, 2019, attack of the Embassy,
a dangerous activity that has separated him from his family and
caused them emotional and financial hardship.  Although AHN claims
that he did not flee immediately when FBI told him "that there were
credible threats to his life from North Korea," that claim does not
suggest that he was not planning to do so, or will not, given the
opportunity.  In addition, HONG CHANG, AHN's friend, co-conspirator,
and the leader of the attack of the Embassy, has fled the district,
choosing the life of a fugitive over his family obligations and
friendship to AHN.  While the authors of the letters of support for
AHN believe that he will not do likewise, they also are surprised
that he is involved in activities targeting North Korea.  (See, e.g.,
Docket No. 33-1 at 37 ("I find the reported events which have led to
his confinement to be shocking and out of character for the type of
person who has been highly regarded and trusted throughout his
military and civilian career.").)  Thus, given AHN's secret life and
willingness to jeopardize his freedom and familial responsibilities,
flight from the United States to yet another country or to an
underground location in the United States – as HONG CHANG has done –
is a reasonable assumption.

## 2.   AHN Poses a Danger to the Community

AHN also presents a danger to the community.  As the United States has explained to this Court, AHN is accused of participating in the attack on diplomatic personnel in Spain – a fact confirmed by HONG CHANG.  (See Docket No. 1 at ¶ 6(n).)  AHN and his accomplices are alleged to have violently assaulted and physically restrained their victims, using knives, machetes, iron bars, imitation handguns, shackles, and cables.  (See id. at ¶ 6.) Multiple victims reported having bags thrown over their heads, and at least one victim reported being threatened with iron bars and imitation handguns.[9]  (See id. at ¶¶ 6(d), (h).)

When the United States Marshals Service arrested AHN on April 18, 2019, they discovered, concealed in his waistband, a fully loaded Springfield Armory XD Sub-Compact model .40-caliber semiautomatic pistol and a second magazine with ten .40-caliber rounds of ammunition, for which he had a conceal-carry permit.  AHN claims that he carried this weapon to protect himself and his family. (See Docket No. 25.)  While AHN asserts that "[t]his factor should have no bearing on whether the Court considers him a danger," that assertion is incorrect.  It demonstrates AHN's familiarity with and access to weapons.  Further, his proficiency with weapons, coupled with the skills and training he acquired in the military, suggests the steps that he may take to protect himself and his family.  If, however, AHN is released on bail, he will not be able to carry a firearm or have any weapons at his disposal.

---

[9] Although AHN suggests that injuries to his hand precluded him from personally wielding these weapons, his suggestion does not preclude the fact that his co-conspirators who joined him during the attack of the Embassy may have done so.  (See Docket No. 33 at 24.)

**III.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny AHN's application and continue to detain him pending extradition.

### DECLARATION OF JOHN J. LULEJIAN

I, John J. Lulejian, declare as follows:

1.   I am an Assistant United States Attorney and have been assigned to prosecute In the Matter of the Extradition of Christopher Philip Ahn, a Fugitive from the Government of the Kingdom of Spain, Case No. 2:19-MJ-01523.   I make this declaration in support of the United States' Opposition to Fugitive's Application for Reconsideration of Order Granting Government's Request for Detention.

2.   Attached hereto as Exhibit A is a true and correct copy of Supplementary Extradition Treaty with the United Kingdom, June 25, 1985, U.S.-U.K., reprinted in S. Exec. Rep. No. 99-17 (1986).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 13th day of June, 2019, at Columbia, South Carolina.

/s/ John J. Lulejian
JOHN J. LULEJIAN